UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
ALEX PALACIOS,

                              Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER          Case No.: 15-CV-0386 (PAE)
MICHAEL GREANEY, Shield #20646, POLICE
OFFICER FRANK MONGE, Shield #27984,
DET. JOSE CHEVERE, Shield #1505,
POLICE OFFICERS JOHN/JANE DOE(S) #S 1-10,

                              Defendants.
_____X


_____
**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**
_____



LAW OFFICE OF DAVID ZELMAN

ATTORNEY FOR PLAINTIFF ALEX PALACIOS

612 EASTERN PARKWAY

BROOKLYN NEW YORK 11225

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………………………………………………….1

STANDARD OF REVIEW…………………………………………………………………………1

FACTUAL OVERVIEW……………………………………………………………………………4

ARGUMENT…………………………………………………………………………………...9

I.   Plaintiff Is Entitled To Summary Judgment On His False Arrest Claim Because There Was No Probable Cause To Arrest Plaintiff For Robbery……………………………………………9

II.  The 2011 Summons Did Not Provide An Independent Basis To Arrest The Plaintiff………13

III. Plaintiff Was Subjected to Excessive Pre-Arraignment Detention…………………………..16

IV. Defendants Are Not Entitled To Qualified Immunity Because Their Conduct Violated Plaintiff's Clearly Established Rights……………………………………………………...19

CONCLUSION…………………………………………………………………………...22

## <u>TABLE OF AUTHORITIES</u>

**STATUTES**

42 U.S.C. § 1983 ......................................................................................................................... 1

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................... 1, 3
Fed. R. Civ. P. 56(c) .............................................................................................................. 1, 3

**FEDERAL CASES**

*Allen v. City of New York*, 2007 U.S. Dist. LEXIS 15 (S.D.N.Y. Jan. 3, 2007) .......................... 19
*American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d
   272 (2d Cir. 1967) ................................................................................................................ 4
*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................................ 25
*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ...................................................................... 4
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 2, 4
*Battle v. Recktenwald*, 2016 U.S. Dist. LEXIS 20432 (S.D.N.Y. Feb. 19, 2016) ...................... 3
*Bernard v. City of Palo Alto*, 699 F.2d 1023 (9th Cir. 1983) ................................................... 23
*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) .............................................................. 5
*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) .............................................................. 2
*Case v. City of N.Y.*, 2017 U.S. Dist. LEXIS 19374, at *24-25 (S.D.N.Y. Feb. 10, 2017) ......... 27
*Case v. City of New York*, 2017 U.S. Dist. LEXIS 19374 (S.D.N.Y. 2017) ................................. 21
*Celestin v. City of N.Y.*, 581 F. Supp. 2d 420 (E.D.N.Y. 2008) ................................................. 14
*Celotex Corp v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 1
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 2
*Chunyu Jean Wang v. Vahldieck*, 2012 U.S. Dist. LEXIS 3763 (E.D.N.Y. Jan. 9, 2012) .......... 20
*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ..................................................... 19, 26
*Crenshaw v. City of Mount Vernon*, 372 F. App'x 202 (2d Cir. 2010) ...................................... 18
*Davis v. City of Detroit*, 1999 U.S. App. LEXIS 32169 (6th Cir. Nov. 24, 1999) ...................... 21
*Dawson v. Cty. of Westchester*, 373 F.3d 265 (2d Cir. 2004) .................................................... 3
*Douglas v. City of New York*, 595 F. Supp. 2d 333 (S.D.N.Y. 2009) ......................................... 11
*Farr v. Paikowski*, 2013 U.S. Dist. LEXIS 5978 (E.D.Wis, 2013) ............................................ 20
*Franks v. City of N.Y.*, 2015 U.S. Dist. LEXIS 72563 (E.D.N.Y. June 4, 2015) ......................... 16
*Golino v. New Haven*, 950 F.2d 864 (2d Cir. 1991) ............................................................ 25, 26
*Gonzalez v. Bratton*, 147 F. Supp. 2d 180 (S.D.N.Y. 2001) ..................................................... 20
*Gonzalez v. City of New York*, 2016 U.S. Dist. LEXIS 177820 (S.D.N.Y. 2016) ........................ 18
*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013) ................................................. 10
*Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005) ..................................................................... 24
*Harewood v. Braithwaite*, 64 F. Supp. 3d 384 (E.D.N.Y. 2014) ............................................... 14
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................. 25
*Jenkins v. City of N.Y.*, 478 F.3d 76 (2d Cir. 2007) .................................................................. 13
*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) .......................................................... 25

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996).......................................... 11, 15, 17

*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................................................... 26

*Mitchell v. City of N.Y.*, 841 F.3d 72 (2d Cir. 2016)................................................................... 4

*Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011)........................................................................... 3

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006)....................................................................... 11

*Pearson v. Callahan*, 129 S. Ct. 808 (Jan. 21, 2009)................................................................. 25

*Pesola v. City of New York*, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. 2016)............................ 21

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980)............................ 4

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016) ........................................................................... 5

*Richards v. City of N.Y.*, 2003 U.S. Dist. LEXIS 8037 (S.D.N.Y. May 7, 2003)........................ 14

*Richardson v. Providence*, No. 09-CV-4647, 2012 U.S. Dist. LEXIS 49068 (E.D.N.Y. Apr. 6, 2012).......................................................................................................................................... 20

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014) ........................... 5

*Sanders v. City of Houston*, 543 F. Supp. 694 (S. Dist. TX. 1982) ........................................... 23

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77 (2d Cir. 2004) ........... 3

See Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003)................................................ 26

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. (1995) ....................................................... 12

*Sorensen v. City of New York*, 2003 U.S. Dist. LEXIS 962 (S.D.N.Y. 2003)............................. 21

*Stansbury v. Wertman*, 721 F.3d 84 (2d Cir. 2013)................................................................... 11

*Thomas V. City Of Chi,*, 1984 U.S. Dist. LEXIS 23971 (N.D. Ill. Aug. 30, 1984)..................... 23

*United States v. Bershchansky*, 788 F.3d 102 (2d Cir. 2015) ................................................ 15, 24

*United States v. Bosurgi,* 530 F.2d 1105 (2d Cir. 1976)............................................................... 3

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) ............................................................. 15, 24

*United States v. Hensley,* 469 U.S. 221 (1985)........................................................................... 18

*United States v. Santa*, 180 F.3d 20 (2d Cir. 1999) ............................................................ 15, 16, 17

*Virgil v. Town of Gates*, 455 F. App'x 36 (2d Cir. 2012) ........................................................... 11

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ........................................................................ 10, 11

*White v. Doyle*, 2014 U.S. Dist. LEXIS 133209 (N.D. Ill. 2014)................................................ 23

*Whiteley v. Warden,* 401 U.S. 560 (1971) ................................................................................. 19

*Willis v. City of New York*, 2015 U.S. Dist. LEXIS 15911 (S.D.N.Y. 2015) ........................ 15, 17

*Wilson v. Layne*, 526 U.S. 603 (1999) ...................................................................................... 25

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010) ........................................................... 2

*Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010)..................................... 2

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007).................................................................... 26

## PRELIMINARY STATEMENT

Plaintiff commenced the action at bar pursuant to 42 U.S.C. § 1983 to seek redress under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, for violations of his innate rights to be free from false arrest, failure to intervene, excessive pre-arraignment detention, denial of medical treatment, illegal investigatory detention, *Monell* claims against Defendant City and state law claims sounding in false arrest, Respondeat Superior and pre-arraignment delay. The Court previously dismissed Plaintiff's *Monell* claims. Plaintiff voluntarily dismissed his claims sounding in denial of medical treatment and illegal investigatory detention. Plaintiff respectfully submits this memorandum of law in support of Plaintiff's motion for partial summary judgment on the issues of false arrest pursuant to 42 U.S.C. § 1983 and excessive pre arraignment detention pursuant to 42 U.S.C. § 1983 and Plaintiff's state law pre-arraignment delay claim and in opposition to Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

## STANDARD OF REVIEW

"The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving

party. *See id*. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. at 323. If the non-moving party submits evidence which is "merely colorable," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. *Dawson v. Cty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011). If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Battle v. Recktenwald*, 2016 U.S. Dist. LEXIS 20432 (S.D.N.Y. Feb. 19, 2016).

Plaintiff also submits this memorandum in opposition to Defendants' motion for summary judgment. "Summary judgment is a drastic remedy which should be granted only when it is clear that the requirements of Fed. R. Civ. P. 56 have been satisfied." *United States v.*

*Bosurgi,* 530 F.2d 1105, 1110 (2d Cir. 1976).  Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In making this determination, the facts must be interpreted in the light most favorable to the non-moving party.  Id. at 255 (citation omitted).  As a result, the reviewing court must accept as true the factual statements in the opposing party's affidavits, and draw all permissible inferences in the nonmovant's favor. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir. 1980).  In addition, any factual doubts are resolved in favor of the non-movant.  *American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d 272 (2d Cir. 1967).  Recently, the Second Circuit has cautioned lower courts to be careful to construe the facts in the favor of non-moving parties and have issued reversals when District Courts have not adhered to this well-established rule. See,  *Mitchell v. City of N.Y.*, 841 F.3d 72 (2d Cir. 2016) ("...drawing all inferences in favor of the appellants, as we must, we conclude to the contrary that these facts are insufficient to establish on summary judgment as a matter of law that the officers had probable cause...") See also *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ( "[D]istrict courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) (reversing summary judgment where the plaintiff offered a competing account of the facts supported by only a single document).

**FACTUAL OVERVIEW**

Plaintiff Alex Palacios has worked as a maintenance porter at 30 Waterside Plaza since 2011.  (EBT Palacios, hereinafter "Pl. Ex. B," p. 44 lines 8-13). On May 22, 2014 at approximately 7:10 a.m. the Plaintiff was arrested at his workplace. (See Joint Stipulated Facts, hereinafter "Pl. Ex. A." ¶17) Police first met with Plaintiff's supervisor. (EBT Greaney, hereinafter "Pl. Ex. C," p. 13 lines 17-22). Plaintiff was escorted out of his workplace by the defendant officers, including defendant Greaney, in full view of his co-workers. (Pl. Ex. B, p. 100 lines 7-11). Plaintiff was transported to the 40th Precinct. (Pl. Ex. A, ¶18). Plaintiff was detained at the 40th Precinct from approximately 9:53 a.m. to approximately 7:00 p.m. on May 22, 2014, a little over ten hours. (Pl. Ex. A, ¶18, ¶22). At approximately 7:00 p.m. Plaintiff was transported from the 40th Precinct to Bronx Central Booking. (Pl. Ex. A, ¶22). Plaintiff was eventually released from Central Booking, without being arraigned, on May 23, 2014 at 11:45 p.m. approximately 40 ½ hours after he was arrested. (Pl. Ex. A, ¶24-25).  Only through this litigation did the Plaintiff learn the reason for this arrest and two day ordeal. Plaintiff has no significant criminal history. (Pl. Ex. B, p. 29 line 23 – p. 30 line 2). Plaintiff has continued working at 30 Waterside Plaza since the time of the arrest. (Pl. Ex. B, p. 43 line 21 – p. 44 line 13). At deposition, defense counsel inquired whether Plaintiff was on the autism spectrum, which Plaintiff denied. (Pl. Ex. B, p. 99 lines 17-19). Plaintiff is unmarried with no children. (Pl. Ex. B, p. 33 lines 6-9). Plaintiff was born at Lincoln Hospital in the Bronx. (Pl. Ex. B, p. 22 lines 6-7). Plaintiff currently resides in Brooklyn.

Discovery has revealed that on July 13, 2012 the daughter of a complaining witness called 911 to report an assault and attempted robbery. (EBT M.P., hereinafter "Pl. Ex. E," p. 38

lines 2-8). The victim of the crime, M.P., met with Defendant Chevere on the day of the incident. (Pl. Ex. A, ¶8). M.P., a Spanish-speaking woman, viewed mugshots at the precinct. (Pl. Ex. A, ¶9). NYPD records indicate M.P. did not know her attacker. (Def. Disclosures, hereinafter "Pl. Ex. D," D10). M.P. told police that the perpetrator was six feet tall. (Pl. Ex. E, p. 63 lines 17-20). NYPD's Omniform Complaint form confirms M.P. reported that the perpetrator was six feet tall. (Pl. Ex. D, D10). The Omniform Complaint form also indicates the perpetrator's eye color, hair color and hairstyle were all reported "unknown." (Pl. Ex. D, D10). The Omniform Complaint form indicates the perpetrator was described as wearing a black baseball cap, blue shorts, sneakers and a black tee-shirt. (Pl. Ex. D, D11).According to Defendant Chevere's paperwork, M.P. described the perpetrator as a black Hispanic with a long black ponytail. (Pl. Ex. D, D46). Towards the beginning of this litigation, Plaintiff's counsel hired an investigator to meet with M.P. At an interview dated February 6, 2016, which is recorded on video, she described the perpetrator as being "Dominican" with "cinnamon skin" and "short crop hair." (Pentad Security Witness Interview Transcript, hereinafter "Pl. Ex. M," p. 4 timeframe 4:10).

M.P. travelled to the 40th Precinct following the incident. (Pl. Ex. E, p. 41 lines 20-23.) Defendant Chevere prepared a computerized photo array and entered into his system a range of height, from 5'8" to 6'0." (Pl. Ex. A, ¶10). It is undisputed that Plaintiff is 5'6" tall. (Pl. Ex. A, ¶11). Defendants admit that even though Plaintiff did not fit the search parameters he was included in the photos viewed by M.P. (Pl. Ex. A, ¶12). At deposition Chevere testified that he "wouldn't be able to answer" as to whether the Photo Manager system "was working incorrectly or possibly other parameters were entered into the system or something else." (EBT Chevere, hereinafter "Pl. Ex. F," p. 47 lines 3-12). According to Chevere, M.P. selected a photo of Plaintiff from the array he provided. (Pl. Ex. F, p. 38 line 21 – p. 39 line 4). At her meeting with

Plaintiff's investigator, Ms. M.P. stated on video that she had told the police it was "a possibility that it was him. I didn't say I was 100%." (Pl. Ex. M, p. 4 timeframe 5:55). At deposition, Ms. M.P. acknowledged that she had so told the investigator and confirmed the accuracy of the statement. (Pl. Ex. E, p. 77 lines 4-9). Nonetheless, at deposition M.P. appeared to contradict herself when she testified that she felt it was certainly the Plaintiff whom she had identified. (Pl. Ex. E, p. 45 lines 3-8). As discussed above, when M.P. first met with the police she was at first unable to provide a detailed description of the perpetrator of the robbery. (Pl. Ex. D, D10-D11). M.P. was never informed that the photo she selected was of a man confirmed to be 5 foot 6 inches in height. (Pl. Ex. F, p. 65 lines 8-17). Chevere testified at deposition that he refused to provide the Plaintiff's actual height to M.P. because he believed a suspect's height to be "privileged information." (Pl. Ex. F, p. 66 lines 3-22, p. 67 line 18 – p. 68 line 2). This is despite the fact that M.P. was apparently advised of Plaintiff's criminal history. (Pl. Ex. D, D51). When M.P. did meet the Plaintiff during this litigation, she immediately denied that Plaintiff was the perpetrator. (Statement in Palacios v. City of N.Y., hereinafter "Pl. Ex. P," p. 3 lines 15-18).

According to police records, NYPD made one visit to Plaintiff's mother's residence without success, on August 10, 2012. (Pl. Ex. D, D42)  Apparently officers made no follow-up attempts to locate the Plaintiff, other than visiting his mother's house on that one instance. Thereafter, the investigation was marked closed on September 19, 2012. (Pl. Ex. D, D43). The Defendants would not admit that the investigation stalled due to lack of evidence, however there does not appear to be any other reason why this investigation was abandoned in 2012. (EBT Monge, hereinafter "Pl. Ex. G," p. 101 lines 9-23).

Almost two years later, the warrant squad reopened the investigation. At his deposition, Defendant Greaney denied any knowledge of why the investigation was reopened. (Pl. Ex. C, p

12 lines 7-14). On May 22, 2014, Defendant Greaney made the arrest in Plaintiff's workplace, as discussed above. (Pl. Ex. A, ¶17). At deposition, Greaney testified that he knew of no reason for Plaintiff's arrest, besides the 2012 robbery. (Pl. Ex. C, p. 20 lines 12-21). During Plaintiff's detention at the 40th Precinct, Chevere contacted M.P. to request her presence at a lineup (Pl. Ex. G, p. 21 lines 10-23). (Pl. Ex. D, D57). According to Chevere, M.P. stated she "probably could not identify the guy" and that she "didn't want to waste the time." (Pl. Ex. A, ¶20). Defendants have offered no explanation as to why they did not attempt to contact M.P. before making the arrest given that plaintiff was arrested almost two years after the incident itself. (See e.g. Pl. Ex. G, p. 19 line 23 – p. 21 line 9). The Bronx DA's Office informed Defendant Monge that they would not prosecute the case. (Pl. Ex. G, p. 17 line 18 – p. 18 line 18). Defendant Monge, while keeping Plaintiff confined at the 40th Precinct, was aware that Plaintiff would not be prosecuted for the robbery. (Pl. Ex. G, p. 22 line 23 – p. 23 line 2). At deposition, Monge testified that Plaintiff was sent to Central Booking after he learned the DA's Office was declining to prosecute, reasoning that the DA's Office would release him if they so chose. (Pl. Ex. G, p. 19 lines 12-15, p. 30 line 18 – p. 31 line 7). However, Monge testified that he never looked into any other reasons for keeping Plaintiff in custody. (Pl. Ex. G, p. 31 lines 22-24).

Following the District Attorney's decision to decline to prosecute, Plaintiff was then detained for an additional 28 hours, until his release at Central Booking. (Pl. Ex. A, ¶26). Defendants argue that the ensuing detention was based solely on a 2011 warrant issued in relation to a summons received by plaintiff for being "in park after dusk." (See May 5, 2011 Summons annexed as Pl. Ex. N). However, Defendant Monge's testimony reveals he did not recall ever running a warrant check. (Pl. Ex. G, p. 31 lines 22-24).  Court records indicate that a warrant was issued on July 12, 2011, then vacated, and the summons dismissed the next day,

July 13, 2011. (See Certificate of Disposition annexed as Pl. Ex. O) (Pl. Ex. A, ¶5) (See

Affidavit of Det. John Sabino, hereinafter "Pl. Ex. H," D85, ¶5). OLPA records exchanged in

this litigation indicate that on May 23, 2014 at approximately 8:26 a.m. Police Administrative

Aide Theresa Andrades-Harper (hereinafter "Harper") reviewed the 2011 warrant while Plaintiff

was detained at Central Booking (Pl. Ex. D, D 87) (EBT Harper, hereinafter "Pl. Ex. I," p. 19

lines 16-19). According to the OLPA records, at approximately 8:37 a.m. Harper's supervisor

Sgt. Doiley ran a NYSID check which returned "negative results." (Pl. Ex. D, D7). "Negative

results" indicated that there was no valid warrant for Plaintiff's arrest. (EBT Sabino, hereinafter

"Pl. Ex. K," p. 47 lines 3-8) (Pl. Ex. I, p. 26 lines 14-20). At deposition, Sgt. Doiley testified that

"negative results" indicated that Plaintiff had no arrests upon which to be arraigned other than

that for the robbery. (EBT Doiley, hereinafter "Pl. Ex. J," p. 28 lines 15-22). At some point,

Plaintiff was furnished with a copy of the Declination of Prosecution form with hand written

notes on it. (Pl. Ex. B, p. 57 lines 17-18) (Affidavit In Support of Declining/Deferring

Prosecution annexed as Pl. Ex. L).  The handwritten notes confirm that initially police at Central

Booking determined there was a warrant but then crossed that information out and determined

there were "no hits." (See Pl. Ex. L).Plaintiff was not released from Central Booking until

approximately 11:45 p.m., or approximately 14 hours after Harper and Doiley performed their

checks. (Ex. Pl. A, ¶24). Strictly following the OLPA records would lead to the unlikely

situation where Defendants released Plaintiff from custody six to seven minutes before they

wrote the warrant had been vacated. (Pl. Ex. D, D6, D7). Defendants admit that even as Plaintiff

left Central Booking, the warrant was still active in the NYPD database and Plaintiff could have

still been arrested on it, until the warrant was removed from the database in June of 2015. (Pl.

Ex. H, D85 ¶5) (Pl. Ex. K p. 18 line 21 – p. 19 line 4). In total, Plaintiff was held for approximately 40 ½ hours and never arraigned. (Pl. Ex. A, ¶25).

## ARGUMENT

I.   Plaintiff Is Entitled To Summary Judgment On His False Arrest Claim Because There Was No Probable Cause To Arrest Plaintiff For Robbery.

A claim of false arrest under Section 1983 is rooted in the Fourth Amendment, which provides an individual with the right to not be arrested without probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852; see also *Douglas v. City of New York*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) ("The Second Circuit has held that a determination of whether probable cause to arrest existed may be made as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."). When determining whether probable cause exists to arrest, a court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). "A court examines each piece of evidence and considers its probative value, and then 'look[s] to the totality of the circumstances' to evaluate whether there was probable cause to arrest and prosecute." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). The police may rely on an identification by the

9

victim of a crime, provided there is no reason to disbelieve the witness's identification. See, e.g., *Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012) (summary order) ("A victim's identification of an assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. (1995)).

The facts at bar indicate that the complaining witness, M.P., has been unable to reliably identify the person who attempted to rob her. According to M.P., when she selected a photo with Defendant Chevere, she had viewed "many" photographs, and she told Chevere there was "a possibility that it was him," but did not say she was "100%." (Pl. Ex. M, p. 4, timeframe 5:55). M.P. confirmed this statement at her deposition; when asked "Weren't you asked that question and didn't you give that answer that it was only a possibility that it was him, that you didn't say it was a hundred percent?" she answered "Yes." (Pl. Ex. E, p. 77 lines 4-9). However, M.P. also testified contradictorily at her deposition that she felt confident in her selection. (Pl. Ex. E, p. 45 lines 3-8). Furthermore, when M.P. initially spoke to the police she described the perpetrator as being a black male, six feet tall, weighing 170 pounds, with "unknown" hair and eye colors, and an "unknown" hair style wearing a black baseball cap, blue shorts and a black tee shirt. (Pl. Ex. D, D10, D11). According to Defendant Chevere, M.P. described the perpetrator to him as being 5'8" to 6'0" tall, with a long black ponytail. (Pl. Ex. D, D46). Speaking to Plaintiff's investigator, M.P. later described the perpetrator as being 5'8" to 5'9" tall, with "cinnamon skin" and "short crop hair," medium build, and wearing a white shirt and blue jeans. (Pl. Ex. M, p. 4 timeframes 4:10 – 6:45). At her deposition she again described the perpetrator as being six feet tall, weighing "130 pounds or less," and having braids. (Pl. Ex. E, p. 27 lines 7-12). Furthermore, it is undisputed that M.P. had no prior acquaintance with the person who attempted to rob her on

July 13, 2012. A witness description such as this one, which fails to single out the person arrested, fails to establish probable cause. See *Jenkins v. City of N.Y.*, 478 F.3d 76, 90-91 (2d Cir. 2007) (Plaintiff "fell within the general physical description" provided by witness and was wearing a shirt similar to the one witness described, but such facts "created no more than an suspicion worthy of investigation.")

Defendant Chevere failed to provide an accurate height for the perpetrator when he set up the Photo Manager system and then failed to verify that the Plaintiff actually matched the description M.P. had given, thus creating an undue risk of an improper identification. It is undisputed that Plaintiff is 5'6" tall. (Pl. Ex. A, ¶11). Defendants Chevere alleges he entered a range of 5'8" to 6'0" when he set up the Photo Manager system. At deposition, Defendant Chevere admitted he was unable to explain how the Plaintiff was included in the photographs viewed by M.P. (Pl. Ex. F, p. 47 lines 3-12). Critically, following M.P.'s selection of the erroneously included photograph, Chevere never told M.P. that the person she selected was six inches shorter than the height she had initially provided to police, of six feet tall. At deposition, M.P. again reiterated that the perpetrator was tall, specifically six feet tall. (Pl. Ex. E, p. 27 lines 9-10). When questioned at deposition, Defendant Chevere testified that he would never disclose the height of a perpetrator as that would be "privileged information." (Pl. Ex. F, p. 66 lines 3-22, p. 67 line 18 – p. 68 line 2). This is despite the fact that the Plaintiff's prior arrest date was apparently made known to M.P. (Pl. Ex. D, D51). Furthermore, M.P. made her initial identification without the knowledge that Plaintiff was a full six inches shorter than the perpetrator she initially described, knowledge intentionally withheld by Defendant Chevere. When M.P. finally did view Plaintiff in person she immediately stated that "it was not him." (Pl. Ex. P, p. 3 lines 15-18). Because information about the Plaintiff's height was readily available to

the police, the Defendants knew or should have known that the Plaintiff did not fit the description given by M.P. and should have considered this information before arresting Plaintiff. See *Celestin v. City of N.Y.*, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) citing *Richards v. City of N.Y.*, 2003 U.S. Dist. LEXIS 8037 (S.D.N.Y. May 7, 2003) ("The police must not ignore exculpatory evidence that would void probable cause if taken into account.")  The failure by the Defendants to verify that the Plaintiff actually matched the description given by M.P., eviscerated probable cause. See *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 398 (E.D.N.Y. 2014) (Police lacked probable cause where witness picked Plaintiff from a photo array but Plaintiff did not fit the description given by witness to the police, specifically being six to eight inches taller.)

Defendants could have contacted M.P. to determine if she could identify the perpetrator, prior to arresting Plaintiff, but did not. As almost two years had passed between the assault and Plaintiff's arrest, a reasonable and prudent police officer would have realized that the complainant's initial description did not match the Plaintiff's actual appearance. Furthermore, a reasonable and prudent police officer would have recognized that the complainant's memory could have faded in the intervening years and might pose an insurmountable burden to prosecution. A reasonable and prudent police officer would have called the complaining witness prior to making an arrest to ensure the complainant could make an identification. Here, Defendant Chevere waited until about 1:00 p.m. on May 22, approximately 6 hours after arresting Plaintiff, to contact M.P. (Pl. Ex. D, D57). Had the Defendants contacted M.P. and asked her if she could still identify the perpetrator, they could have avoided falsely arresting Plaintiff.

II.   <u>The 2011 Summons Did Not Provide An Independent Basis To Arrest The Plaintiff</u>.

Defendants argue that the dismissed 2011 summons provided an independent source of probable cause for Plaintiff's arrest. As discussed above, the existence of probable cause to arrest depends on "those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance" on an invalidated warrant." *United States v. Bershchansky*, 788 F.3d 102, 113 (2d Cir. 2015) citing *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992); *accord United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999). Officers are generally entitled to rely upon a report stating an individual has an open warrant, provided there is no reason to doubt the reliability of the information. See *Willis v. City of New York*, 2015 U.S. Dist. LEXIS 15911 (S.D.N.Y. 2015) citing *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999).

Defendant Greaney testified at deposition that, when he arrested Plaintiff, he only knew of the alleged robbery and not of the 2011 dismissed summons or any other reason to arrest Plaintiff. (Pl. Ex. C, p. 20 lines 12-21). If Greaney was not aware of the 2011 dismissed summons, then he could not have relied upon it to determine there was probable cause to arrest. *Franks v. City of N.Y.*, 2015 U.S. Dist. LEXIS 72563 (E.D.N.Y. June 4, 2015) (Officer's awareness of facts was necessary to establish probable cause). Defendant Monge, for his part testified at deposition that he did not recall running any warrant checks before Plaintiff was transported to Central Booking. (Pl. Ex. G, p. 31 lines 22-24). Monge also testified that after he learned that the DA's Office was declining to prosecute, he decided to transport Plaintiff to Central Booking rather than void the arrest at the 40th Precinct as the DA's Office had made the decision not to prosecute and so the DA's Office should be responsible for releasing Plaintiff.

13

(Pl. Ex. G, p. 30 line 18 – p. 31 line 4). Likewise, the Omniform Arrest form completed by Monge makes no mention of the 2011 dismissed summons. (Pl. Ex. D, D1, D2, D3). When asked at deposition if he was aware of the 2011 dismissed summons at the time he completed the form, Monge denied knowledge. (Pl. Ex. G, p. 51 lines 6-11). When questioned further regarding the absence of any mention of the 2011 dismissed summons, Monge admitted that he could have included information about the dismissed summons but did not. (Pl. Ex. G, p. 54 line 17 – p. 55 line 4). Monge's testimony reveals that the dismissed summons was of no importance to him, that he did not rely on it and that he never attempted to verify it. This is critical as only the circumstances actually known to the arresting officers at and before the time of the arrest can generate probable cause. See *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).

Defendants had reason to doubt the validity of the 2011 dismissed summons and should have verified that its existence accordingly. As discussed above, police are entitled to rely upon an automated warrant report where there is no reason to doubt its validity. See *Willis v. City of New York*, 2015 U.S. Dist. LEXIS 15911 (S.D.N.Y. 2015) (Police officer entitled to rely on a warrant vacated earlier on the day of the arrest, where officer had no reason to doubt the validity of the warrant). Whereas the warrant in *Willis* had been vacated for less than one day at the time of the arrest, the warrant in the instant case had been vacated for more than four years. In *Santa, supra*, the Second Circuit held that it was objectively reasonable for officers to rely on a statewide database because there was no proof the recordkeeping system was unreliable. See *United States v. Santa*, 180 F.3d 20, 30 (2d Cir. 1999). Likewise in *Willis*, the reasonableness of the officer's belief was supported by evidence that the database was updated daily. See *Willis* at 16-17. The Court noted that the officers in *Santa* expended exceptional effort to verify the warrant, including contacting the issuing police department and obtaining a faxed copy. See

*Santa*, 180 F.3d 20, 30.  Here, Defendants' testimony shows they took no such steps to verify the 2011 dismissed summons. Defendant Greaney testified at deposition that he was aware of inconsistencies between the OCA and NYPD warrant databases, yet he took no steps with respect to the summonses. (Pl. Ex. C, p. 44 lines 2-17).   The defendants should have recognized the possibility that the warrant was invalid based on the common and widely publicized incidence of plaintiffs falsely arrested based on vacated warrants. See *Gonzalez v. City of New York*, 2016 U.S. Dist. LEXIS 177820 at 22-25 (S.D.N.Y. 2016) (NY Daily News coverage indicating there were "1.2 million outstanding warrants for low-level broken-windows offenses [and] .... [m]any stay on the books for years" demonstrated problem was "widespread and well established"). Therefore, because the Defendants were not aware of the 2011 dismissed summons, did not rely on it at all, did not note it or attempt to verify it, the 2011 dismissed summons could not provide probable cause for Plaintiff's arrest.

Even assuming the Defendants were actually aware of the dismissed summons and reasonably relied on it, the officers' belief in the existence of an outstanding summons justified only an investigatory stop for the purpose of verifying the existence of the warrant. See *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206-07 (2d Cir. 2010) (Officer detained Plaintiff while dispatcher checked for a warrant, based on belief that he had seen a warrant for Plaintiff signed at police headquarters) citing *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999); *United States v. Hensley,* 469 U.S. 221, 232, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (officers who stop a suspect in reliance on a flyer or bulletin that was issued on the basis of facts supporting reasonable suspicion themselves are justified in making the stop); and *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971) (officers who stopped suspect in reliance on radio broadcast that was itself not supported by probable cause were

"entitled" to act based on bulletin). Significantly, the defendant officer in *Crenshaw* detained plaintiff for only twenty minutes, the time necessary to determine that the warrant did not exist. See *Crenshaw*, 372 F. App'x 202, 206. Here, while Defendants argue the vacated summons justified detaining Plaintiff after the district attorneys' Office declined to prosecute, Monge testified that he did not make any effort to verify the summons while Plaintiff was detained in the 40th Precinct. (Pl. Ex. G, p. 31 lines 22-24). In fact, no effort was made to verify the dismissed summons until approximately 8:37 a.m. on May 23. (Pl. Ex. D, D7). This was approximately 25 and ½ hours after Plaintiff was first taken into custody by Greaney and 14 hours after Plaintiff was transported to Central Booking by Monge.

III.   <u>Plaintiff Was Subjected to Excessive Pre-Arraignment Detention.</u>

Plaintiff brought State and Federal causes of action sounding in excessive pre-arraignment detention. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) sets forth the parameters of a delay in arraignment claim pursuant to 42 U.S.C. Section 1983.  In *McLaughlin,* the Supreme Court held that 48 hours is the outer limit of a reasonable detention, and that a delay beyond 48 hours will generally be considered unreasonable. *McLaughlin*, 500 U.S. at 57. However, *McLaughlin* does not stand for the proposition that any detention of less than 48 hours is reasonable. *See Allen v. City of New York*, No. 03-CV-2829, 2007 U.S. Dist. LEXIS 15 at *45 (S.D.N.Y. Jan. 3, 2007) ("*County of Riverside* makes clear that an arraignment is not constitutionally permissible merely on the ground that it is provided within 48 hours and that a constitutional violation occurs where the arraignment is delayed unreasonably" (internal quotations omitted)).  Whether a pre-arraignment delay is unreasonable is a question for the jury, and the jury may find that a detention of much less than 48 hours is unreasonable and award damages for excessive detention. *See e.g. Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 199

(S.D.N.Y. 2001) (upholding jury's finding that 27 hour detention was unreasonable); *Richardson v. Providence*, No. 09-CV-4647, 2012 U.S. Dist. LEXIS 49068 (E.D.N.Y. Apr. 6, 2012) (hour and a half detention due to ill will or for delay's sake states a claim for excessive detention); *Chunyu Jean Wang v. Vahldieck*, No. 09-CV-3783, 2012 U.S. Dist. LEXIS 3763 (E.D.N.Y. Jan. 9, 2012) (denying summary judgment to defendants on excessive detention claim despite the fact that "plaintiff's detention lasted considerably less than the threshold 48 hours laid out by the Supreme Court in *McLaughlin*); *Farr v. Paikowski*, 2013 U.S. Dist. LEXIS 5978 (E.D.Wis, 2013) (Finding a 2 ½ hour delay unreasonable where officers brought arrestee into custody solely to question her); *Davis v. City of Detroit*, No. 98-1254, 1999 U.S. App. LEXIS 32169 (6th Cir. Nov. 24, 1999) (35-hour delay could be unreasonable under *McLaughlin*).

Courts have held that delays of substantially less than 48 hours may be unreasonable where, as here, the delay was occasioned for no reason or for no valid reason. See e.g. *Case v. City of New York*, 2017 U.S. Dist. LEXIS 19374, at *23 (S.D.N.Y. 2017) ("Plaintiffs claim that their release was delayed "to deter and/or prevent them from participating in further OWS-related demonstrations"); *Pesola v. City of New York*, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. 2016) (plaintiffs alleged pre-arraignment delays were punishments for refusing to submit to iris scans); *Sorensen v. City of New York*, 2003 U.S. Dist. LEXIS 962 (S.D.N.Y. 2003) (plaintiffs alleged a policy of detaining RNC arrestees longer than would otherwise be required).

While Section 1983 sets forth the Federal standard for excessive pre-arraignment detention, New York State has adopted a more stringent standard. See, *Sorensen v. City of N.Y.*, 2003 U.S. Dist. LEXIS 962, at *8 (S.D.N.Y. Jan. 22, 2003) ("In this case, plaintiff was held for forty-two hours prior to being arraigned. Although the United States Supreme Court has held that an arrestee has a federal constitutional right to be arraigned within forty-eight hours, see County

of *Riverside v. McLaughlin*, 500 U.S. 44, 63, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991), New York has set a more stringent limit by providing that a time period over twenty-four hours is both unreasonable and violative of N.Y. C.P.L. Section 140.20(1). See *Sorensen III*, 2000 U.S. Dist. LEXIS 15090 at [WL] *12.")

Viewed in a light most favorable to the Defendants, the evidence here shows that the Defendants knew or should have known the 2011 dismissed summons had been vacated by May 23 at 8:47 a.m. at the latest. Harper testified that she checked the 2011 warrant at approximately 8:26 a.m. on May 23, 2014. (Pl. Ex. I, p. 19 lines 16-19). Harper also testified that her supervisor, Sgt. Doiley, checked her work approximately 15-20 minutes later. (Pl. Ex. I, p. 34 line 13 – p. 35 line 2). Furthermore, the OLPA records indicate that by 8:37 a.m. PAA Harper had run a warrant check and Sgt. Doiley had run a NYSID and name check with "neg. results." (Pl. Ex. D, D7). This sequence of events is confirmed by the handwritten notes on the Affidavit in Support of Declining Prosecution provided to Plaintiff. (Pl. Ex. L). Inexplicably, the Defendants took approximately fifteen hours to release Plaintiff after learning the summons was invalid and they therefore had no legitimate basis to detain him until almost midnight on May 23, 2014.

Defendants argue that it took a minimum of 28 hours to determine that the 2011 dismissed summons for walking in a park after dusk was invalid. Defendants argue that they did not actually learn the 2011 dismissed summons was invalid until 11:51 p.m., or shortly after Plaintiff was released. (Pl. Ex. D, D7). The proposition that Defendants would release Plaintiff, believing they held him on a valid warrant and coincidentally learn five minutes later that the warrant had been invalid, frankly beggars belief.  Rather, on these facts, the only plausible explanation is that Plaintiff was held unnecessarily, either for an unlawful reason or for no reason

at all.

Even assuming *arguendo* that the Defendants actually took 28 hours to determine that the 2011 summons had been vacated, Defendants have offered no evidence to show that 28 hours was reasonably necessary to verify existence of a warrant. "If a person is detained for even a few hours although it was administratively possible to have completed earlier a probable cause determination, the excessive detention period is unconstitutional." See *Thomas V. City Of Chi.*, 1984 U.S. Dist. LEXIS 23971, at \*14-15 (N.D. Ill. Aug. 30, 1984)) citing *Bernard v. City of Palo Alto*, 699 F.2d at 1025; *Sanders v. City of Houston*, 543 F. Supp. at 700-02. Defendants have only alleged in general terms that the warrant issue needed to be resolved. Such general statements cannot establish the reasonableness of the 28 hour detention. See *White v. Doyle*, 2014 U.S. Dist. LEXIS 133209, at \*12-13 (N.D. Ill. 2014) ("Defendants have not offered any explanation why Plaintiff was detained for so long except to say that it took that long to complete the necessary administrative tasks. But they do not identify a single task that they completed after 1:00 p.m. and they have provided no justification for the six-and-a-half hour delay that followed. Plaintiff was arrested for a nonviolent misdemeanor - a circumstance that increases the burden on the police to expedite his release.") See also *Green v. Baca*, 226 F.R.D. 624, 631 n.6 (C.D. Cal. 2005) ("Here, beyond defendant's general allegations that the LASD needs time to complete certain administrative steps, and, more importantly, to check for wants and holds, defendant offers nothing justifying why it took twelve and a half hours to release plaintiff. Defendant does not attempt to explain why the allegedly necessary administrative steps took twelve and a half hours to complete. Thus, the court can neither find that twelve and a half hours was reasonable or that it was unreasonable." As mentioned previously, because defendants allege they relied on the dismissed summons to detain plaintiff for 28 hours, the burden is on the

defendants to show its reasonableness, not the plaintiff to show its unreasonableness.  See,

*United States v. Bershchansky*, 788 F.3d 102, 113 (2d Cir. 2015) citing *United States v. George*,

975 F.2d 72, 77 (2d Cir. 1992); *accord United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999).

Furthermore, even after Plaintiff's release from Central Booking on May 23, 2014,

according to the Defendants, he was still subject to arrest on the vacated warrant, because the

NYPD's ADW computer system was not updated to accord with the OCA system until June 16,

2015. (Pl. Ex. D, D 87) (Pl. Ex. K, p. 18 line 21 – p. 19 line 5). Luckily, plaintiff was never

arrested again on the dismissed summons.

IV.     Defendants Are Not Entitled To Qualified Immunity Because Their Conduct Violated
        Plaintiff's Clearly Established Rights.

Qualified immunity does not rest in public officials when they "violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Pearson v.*

*Callahan*, 129 S. Ct. 808, 815 (Jan. 21, 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). "Clearly established for purposes of qualified immunity means that the contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."  *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quotations omitted) (citations

omitted).

At the time of Plaintiff's arrest, "[t]he right not to be arrested or prosecuted without

probable cause ha[d], of course, long been a clearly established constitutional right." *Golino v.*

*New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Although an officer need only have "arguable"

probable cause, it is crucial to note that:

> "Arguable" probable cause should not be misunderstood to mean "almost" probable
> cause. The essential inquiry in determining whether qualified immunity is available to an
> officer accused of false arrest is whether it was objectively reasonable for the officer to

conclude that probable cause existed. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citing, e.g., *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)). Arguable probable cause is assessed under the same definition and requirements as probable cause and exists only "if *'at the moment the arrest was made* . . . the facts and circumstances *within the[ officers'] knowledge* and of which they *had reasonably trustworthy information* were sufficient to warrant a prudent man in believing' that [the suspect] had violated the law." *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (citations omitted) (emphasis in original). Overall:

In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist. *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (citing, e.g., *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, the right to be free from an excessive detention was clearly established by the United State Supreme Court in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). As was held in, *Allen v. City of N.Y.*, 2007 U.S. Dist. LEXIS 15, at *55-56 (S.D.N.Y. Jan. 3, 2007) ("Here, the rule of *County of Riverside* -- that officers cannot intentionally delay an arraignment for no reason -- was "clearly established" at the time of the plaintiffs' arrest and detention. No reasonable officer could have believed it was permissible to intentionally delay a plaintiff's arraignment based on ill will or delay for delay's sake. The fact that defendants contest the version of event presented by plaintiffs of course does not entitle them to qualified immunity. *See Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) ("Where the circumstances are in dispute, and contrasting accounts present [unresolved] factual issues . . ., a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.") (citations and

quotation marks omitted). Thus, the defendants are not entitled to qualified immunity on this claim.")

In this case, Defendant Monge determined that plaintiff should be required to go to Central Booking despite his knowledge that plaintiff would not be prosecuted for the robbery charge which was the intial basis for the within arrest.  That decision, which defendant Monge admitted at deposition was not based upon his belief that plaintiff had a warrant, subjected plaintiff to an unreasonable delay.  While Monge may not have known at the time how long plaintiff would be in custody following his decision to send plaintiff to Central booking, the fact that the delay resulted in a further 28 hour detention was based upon Monge's decision to intentionally delay plaintiff's incarceration by not verifying that plaintiff was, in fact, wanted. In sum, the right to be from an unreasonable detention, as plaintiff was, has been clearly established since at least 1991.  Defendants have failed to meet their burden to demonstrate their entitlement to qualified immunity. See also, *Case v. City of N.Y.*, 2017 U.S. Dist. LEXIS 19374, at *24-25 (S.D.N.Y. Feb. 10, 2017)"The rule . . . that officers cannot intentionally delay an arraignment for no reason—was 'clearly established' at the time of [P]laintiffs' arrest and detention. No reasonable officer could have believed it was permissible to intentionally delay a plaintiff's arraignment based on ill will or delay for delay's sake."

## CONCLUSION

In sum, plaintiff has demonstrated his entitlement to summary judgment on this false arrest and excessive pre arraignment detention claims.  Furthermore, defendants are not entitled to summary judgment as when the facts are viewed in a light favorable to the plaintiff, plaintiff suffered a constitutional deprivation, in that he was arrested without cause and held for an unreasonable period of time without arraignment.

Dated: Brooklyn, New York
        March 24, 2017

                                        **LAW OFFICE OF DAVID A. ZELMAN**

                                                    /s
                                        _____
                                        By: David A. Zelman, Esq.
                                        Attorney for Plaintiff
                                        612 Eastern Parkway
                                        Brooklyn, New York 11225
                                        (718) 604-3072

TO:     <u>Via ECF</u>
         Phillip Frank, Esq.
        New York City Law Dept.
        100 Church Street
        New York, New York 10007