UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

ALEX PALACIOS,

                      Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER     Case No.: 15-CV-0386 (PAE)
MICHAEL GREANEY, Shield #20646, POLICE
OFFICER FRANK MONGE, Shield #27984,
DET. JOSE CHEVERE, Shield #1505,
POLICE OFFICERS JOHN/JANE DOE(S) #S 1-10,

                      Defendants.
_____X


**MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT**


LAW OFFICE OF DAVID ZELMAN

ATTORNEY FOR PLAINTIFF ALEX PALACIOS

612 EASTERN PARKWAY

BROOKLYN NEW YORK 11225

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum in reply to defendants' April 20th memorandum in opposition to plaintiff's motion for summary judgment.

## ARGUMENT

I. Neither defendant Greaney or Monge knew or relied upon the 2011 dismissed summons at the time of plaintiff's arrest or thereafter.

Discovery in this case has revealed and the parties admit that a 2011 dismissed summons was still improperly appearing on plaintiff's record which was retrieved prior to plaintiff being arrested on May 22, 2014. However, the record in this case makes it equally clear that neither officer Greaney nor Monge were aware of this fact or took any action about it. The dismissed summons was simply a non issue to them. When asked at deposition about the within May 22, 2014 arrest defendant Greaney testified:

> Q. You were given information about him that he was wanted, correct?
> MR. FRANK: Objection. You can answer.
> A. Correct.
> Q. Who gave that to you?
> MR. FRANK: Objection. You can answer.
> A. I was given an I-card from my supervisors with the information on it.
> Q. Was the I-card for a robbery?
> MR. FRANK: Objection. You can answer.
> A. Yes. (Pl. Ex. C, p. 9, line 18 to p. 10, line 7)
>
> Q. What were you given?
> MR. FRANK: Objection to form. You can answer.
> A. I was given an I-card with the subject's name, pedigree information and the charge he was wanted for. (Pl. Ex. C, p.11, lines 8-13)
>
> Q. Did you develop any other information about him through department computer checks other than an address?
> MR. FRANK: Objection to form. You can answer.
> A. What other type of information?
> Q. Anything, was there anything else that you remember obtaining about him in May 2014?

1

A. Basic pedigree information, arrest history. (Pl. Ex. C, p. 11, line 20 to 12, line 6)

Similarly, defendant Monge recalled nothing specific about the 2011 dismissed ticket and also took no steps in relation to it:

Q. Do you remember Michael Greaney telling you anything about him?
A. No.
Q. Do you remember him handing you any paperwork or is it just he handed you this defendant?
MR. FRANK: Objection to the form.
A. He just brought in the defendant to the office.
Q. Don't remember any discussion?
A. That he picked him up from his job, that was it.
(Pl. Ex. G, p. 64, line 25 to p. 65, line 13)

Q. You are allowed to indicate that in an arrest report, that someone has been taken into custody as a result of a warrant, correct?
MR. FRANK: Objection to the form.
A. Well, he was taken into custody for the robbery.
Q. Right. The question is if you're permitted in the arrest report to make note of the fact that there's a warrant?
MR. FRANK: Objection. You can answer.
A. I may have, yes.
Q. You have done that in the past?
MR. FRANK: Objection.
A. I've done it.
Q. Any reason that it wasn't done in this case?
A. No.
Q. Do you know if at the time that you wrote this arrest report you were aware that he had a warrant or not?
MR. FRANK: Objection to the form.
A. Not to my recollection, no.
Q. Don't know one way or another?
A. I don't remember, no. (Pl. Ex. G, p. 50, line 9 to p. 51 line 13)

Defendants argue that since defendant Greaney was in possession of information which revealed the existence of the 2011 dismissed summons, that this knowledge can be imputed to defendant Monge and defendants are therefore entitled to qualified immunity for relying upon it. The fallacy of this argument is that it is clear from the record in this case that neither of the officers did in fact rely on the dismissed summons and the testimony supports the inference they

2

were simply not aware of it. The information regarding the dismissed summons was admittedly never made available to defendant Monge via officer Greaney. In sum, the use of the dismissed summons as a defense in this action is misplaced as no officer actually relied upon it. Since there was no actual reliance on it, the defense of qualified immunity is not properly applied to the defendants. In the alternative, there is a factual issue as to whether the officers actually relied in good faith upon the dismissed summons for any actions they took with respect to Mr. Palacios. See, *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 471 (S.D.N.Y. 2013) ("Because there is no evidence that Investigator Blake and his team of officers actually relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization, in executing the search, the requisite levels of deliberateness and culpability justifying suppression are lacking.") See also, *McDay v. Travis*, 303 F. App'x 928, 931 (2d Cir. 2008) ("Second, we are aware of no legal authority--and the City has cited none--suggesting that a municipality may not be liable for detaining a parollee on the basis of a parole warrant that is "facially valid," but is in fact void as a matter of law.")

II. Plaintiff need not demonstrate an improper motive to succeed on his excessive detention claim

Defendants argue that in order to prevail on an excessive detention claim, plaintiff needs to demonstrate that defendants had an "improper motive" in delaying plaintiff's arraignment. However, this cause of action does not require any particular state of mind or motive. See *Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005) ("The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. at 397.") Once plaintiff demonstrates that he was unreasonably detained for a period of time in excess of what is required for purposes of arraignment, i.e fingerprinting, photographing and the

3

administrative steps incident to an arrest, the burden shifts to the defendants to demonstrate that the detention was performed for a proper penological purpose. See, *Wayland v. Springdale*, 933 F.2d 668, 670 (8th Cir. 1991) A defendant may be detained only for as long as it takes to process "the administrative steps incident to arrest." *Gerstein*, 420 U.S. at 114.

    III.    Defendant Monge's decision to continue to detain plaintiff after he knew plaintiff would not be prosecuted for the robbery caused plaintiff's excessive detention

Defendants argue in a footnote that since plaintiff had been validly arrested for the underlying robbery, defendant Monge's decision to continue to detain plaintiff at the precinct did not violate plaintiff's rights to be free from both false arrest and excessive pre arraignment detention. (Defendants' brief p. 6). However, an arresting officer does have an obligation to release a detainee once the reason for the detention has dissipated. See, *Alvarado v. United States*, No. CV 14-2066-TUC-LAB, 2015 U.S. Dist. LEXIS 35010, at *11 (D. Ariz. Mar. 19, 2015) It is clearly established that a person "may not be arrested, or *must be released from arrest*, if previously established probable cause has dissipated." *U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 70 n.17 (E.D.N.Y. 2015) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." (citing *People v. Quarles*, 88 Ill. App. 3d 340, 410 N.E.2d 497, 43 Ill. Dec. 497 (Ill. App. Ct. 1980) (when police were informed by landlord that defendant lived in apartment, they should have released him because they no longer had probable cause to believe that defendant had committed the offense of attempted burglary). Here, once defendant Monge learned that plaintiff would not be prosecuted for the robbery, he had an obligation to expeditiously release him. The fact that the dismissed summonses was not even a factor in Monge's decision to continue to detain plaintiff was established at his deposition when he agreed that he sent plaintiff to Central Booking because it was the District Attorney's

4

office who declined to prosecute plaintiff so they could release him. (See Plaintiff's Brief in Support of Motion, page 7; (Pl. Ex. G, p. 19 lines 12-15, p. 30 line 18 – p. 31 line 7, p. 31 lines 22-24). In sum, after it was known plaintiff would not be prosecuted for the robbery offense, defendants had an obligation to release plaintiff from custody and their failure to do so constituted a false arrest and excessive pre-arraignment detention.

    IV.    Defendants contention that officers at Central Booking believed plaintiff had an active warrant until 11:45 P.M on May 23, 2014 is belied by the record

As was pointed out in plaintiff's brief in support of summary judgment, it was known to the officers at Central Booking, during the morning of May 23 that plaintiff's was not wanted. (Plaintiff's Brief in Support, p. 8). As your Honor is aware, following defendants service of their motion a consent application was made to two depositions of witnesses defendants only disclosed contemporaneously with their motion. The application was granted and the summary judgment schedule was adjourned to allow for these depositions. One of these depositions was a police detective with 21 years experience in the warrant section. Detective Sabino was shown Plaintiff's Exhibit D7 which is the "OLPA" form documenting the notes recorded by officers at Central Booking. With respect to the note recorded at 8:37 AM on May 23, 2014, Detective Sabino testified as follows:

    Q. Now, have you seen that before today?
    A. No.
    Q. With respect to 8:37 a.m., can you just read the notes section for us?
    A. DP Number 4969, warrant checked, done by PAA Harper. Defendant has a warrant, docket number 2011-Sam, X-ray, 047660. NYSID and name check done by Sergeant Doiley, negative results.
    Q. All right. Now, is that a docket number, you said? I'm sorry. Is that a docket number you said, 2011?
    A. Yes. (Pl. Ex. K, P. 45 lines 6-19)

    Q. Okay. So according to that document, that OLPA form, I think it's D7 you have, they wrote down that there was an open warrant for that docket number on May 23, 2014 at 8:37 a.m.; is that correct?

A. Correct.
Q. All right. Now, the next line says the NYSID and name check done with negative results, correct?
MR. FRANK: Objection to the form. You can answer.
A. Correct.
Q. What does that mean in police lingo?
MR. FRANK: Objection to the form.
A. It would mean that a name and a NYSID were ran through some system by this particular sergeant, Doiley, and there were negative results.
Q. Does negative results mean that there was no warrant?
MR. FRANK: Objection to the form.
A. I would take that to be there were no warrants, yes. (Pl. Ex. K., p. 46 line 6 to p. 47, line 8)

Therefore, despite defendants arguments to the contrary, the officers at Central Booking were admittedly aware in the morning of May 23, 2014 that plaintiff had no warrant. There is no support in the record that officers learned any new information at any point following the name and NYSID check performed in the morning of May 23, 2014 and the unsupported allegation that officers learned that plaintiff was not wanted at 11:45 PM on May 23, 2014 is simply false. In fact, as discussed in plaintiff's brief in support of summary judgment and not opposed by defendants, plaintiff was subject to arrest for this same 2011 dismissed summons for walking in the park after dusk even after he left Central Booking on May 23, 2014 because the summons was not cleared from defendants database until June of 2015. (Brief in Support, p.8)

## CONCLUSION

In sum, plaintiff has demonstrated his entitlement to summary judgment on this false arrest and excessive pre arraignment detention claims. Furthermore, defendants are not entitled to summary judgment as when the facts are viewed in a light favorable to the plaintiff, plaintiff suffered a constitutional deprivation, in that he was arrested without probable cause and held for an unreasonable period of time without arraignment.

Dated: Brooklyn, New York
      April 30, 2017

LAW OFFICE OF DAVID A. ZELMAN

                                                                                                 By: David A. Zelman, Esq.
Attorney for Plaintiff
612 Eastern Parkway
Brooklyn, New York 11225
(718) 604-3072

TO:    <u>Via ECF</u>
        Peter Brocker, Esq.
        New York City Law Dept.
        100 Church Street
        New York, New York 10007